UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVIS BUDGET GROUP, INC.<br>Plaintiff,<br>-against-<br>MATTHEW HALBOWER, et al.<br>Defendants. | 26-CV-5512 (RFT)<br>**OPINION & ORDER** |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

This case is before me on consent for all purposes under S28 U.S.C. Section 636(c). Pending before the Court is an action for disgorgement of short-swing profits under Section 16(b) of the Securities Exchange Act of 1934, as amended. I have carefully considered the parties' submissions, and for the reasons set forth below, the motion for settlement approval ("Settlement Approval Motion") (ECF 12) is **GRANTED**.

**I.**

**BACKGROUND**[1]

**A. Plaintiff's Pre-Complaint Investigation**

Plaintiff received several requests from purported Plaintiff securityholders, demanding that Plaintiff pursue disgorgement against Defendants[2] under Section 16(b). (*See* ECF 14,

[1] Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

[2] Defendants are Matthew Halbower, Pentwater Capital Management LP, Crown Managed Accounts SPC acting for and on behalf of Crown/PW Segregated Portfolio, LMA SPC for and on behalf of the MAP 98 Segregated Portfolio, Oceana Master Fund Ltd., Oceana Fund Ltd., Oceana Fund LLC, Pentwater Credit Master Fund Ltd., Pentwater Credit Fund Ltd., Pentwater Credit Fund LLC, Pentwater Equity Opportunities Master Fund Ltd., Pentwater Equity

Declaration of Glenn M. Kurtz ("Kurtz Decl.") ¶ 21.) Plaintiff investigated potential Section 16(b) claims against Defendants. (*See id.* ¶ 5.) Defendants complied with Plaintiff's investigation throughout the process. (*See id.* ¶ 6.)

Plaintiff requested a broad range of documents from Defendants concerning several relevant topics such as Defendants' corporate structure and policies, allocation of trades among Defendants' funds, and various persons' investment interests in the funds that traded in Plaintiff securities.. (*See id.* ¶ 5.) Defendants made a total of four productions in response to these requests with the first being on May 24, 2026, the second on May 27, 2026, the third on June 3, 2026, and the final production on July 10, 2026. (*See id.* ¶ 6.) These documents were produced subject to confidentiality restrictions. (*See id.*)

Plaintiff reviewed the information produced by Defendants. (*See id.* ¶ 7.) Plaintiff performed numerous calculations to determine potential liability under different assumptions with respect to the likely claims. (*See id.*) Plaintiff and Defendants discussed the strength of Plaintiff's claims as well as potential defenses Defendants could raise and their strength, and Plaintiff evaluated the strength of the potential defenses. (*See id.* ¶¶ 7-8.)

**B. Negotiations and Settlement**

The parties exchanged several offers and counter offers before reaching agreement. (*See id.* ¶ 9.)

---

Opportunities Fund Ltd., Pentwater Equity Opportunities Fund LLC, Pentwater Merger Arbitrage Master Fund Ltd., Pentwater Merger Arbitrage Fund Ltd., Pentwater Merger Arbitrage Fund LLC, Pentwater Event Fund Ltd., Pentwater Event Fund LLC, Dockside Fund I LP, Investment Opportunities SPC for the Account of Investment Opportunities 3 Segregated Portfolio, PWCM Master Fund Ltd., Pentwater Unconstrained Master Fund Ltd., Pentwater Unconstrained Fund Ltd., and Pentwater Unconstrained Fund LLC.

On June 10, 2026, the parties meet to discuss a potential settlement. (*See id.* ¶ 10.) The parties were unable to reach an agreement. (*See id.*) Following the meeting, the parties continued to exchange offers and counteroffers through counsel. (*See id.* ¶ 11.)

On June 16, 2026, Plaintiff filed the Complaint. (*See id.* ¶ 12; *see also* ECF 1, Compl.)[3] The parties continued to discuss and negotiate a possible settlement. (*See* ECF 14, Kurtz Decl. ¶ 13). On June 18, 2026, the parties reached an agreement in principle. (*See id.*) The parties agreed to resolve the claims asserted in the Complaint (ECF 1) for $650 million, subject to the terms of a settlement agreement. (*See* ECF 14-1, Settlement Agreement ¶ 5.)

On June 19, 2026, Plaintiff's Board of Directors (the "Board") held a board meeting and considered the terms of the settlement. (*See* ECF 14, Kurtz Decl. ¶ 14.) The Board consists of six members, four of whom are independent directors under the Nasdaq listing standards. (*See id.*) During the meeting, the law firm White & Case LLP advised the Board on the material issues related to their assessment of the settlement, including but not limited to their fiduciary duties to stockholders and the strengths and weaknesses of Plaintiff's claims against Defendants. (*See id.*) At that meeting, the Board of Directors approved the settlement agreement. (*Id.*; *see generally* ECF 14-1, Settlement Agreement.) The parties signed the Settlement Agreement that day. (*See* ECF 14, Kurtz Decl. ¶ 14; *see also* ECF 14-1, Settlement Agreement at 16-17.)[4]

---

[3] Plaintiff first filed its complaint under seal in 26-MC-00305 and opened the above-captioned civil action on June 29, 2026.

[4] The last two pages of the Settlement Agreement (ECF 14-1) are both numbered 16. For the purposes of this order the second page 16 is referred to as page 17.

**II.**

**SECTION 16(b) LEGAL FRAMEWORK**

Section 16(b) authorizes a suit to be brought only where there has been a prior request that the issuer bring suit that has not been acted upon or the issuer "fail[s] diligently to prosecute" a Section 16(b) suit. *Chechele v. Elsztain*, No. 11 CIV. 3320 (SAS), 2012 WL 12358221, at *1 n.1 (S.D.N.Y. Aug. 1, 2012). A court reviews Section 16(b) settlements by assessing the "diligen[ce]" of the corporation's pursuit of the Section 16(b) profits. *See id. at *2.*. Section 16(b) does not provide a standard for determining if a settlement agreement is valid. *See* 15 U.S.C. § 78(b). However, scrutiny is required; otherwise "Congress's intent that the enforcement be real and not illusory could not be implemented." *Revive Investing LLC v. FBC Holdings S.A.R.L*, No. 20-CV-618 (ALC) (GWG), 2021 WL 56905, at *6 (S.D.N.Y. Jan. 7, 2021), *report and recommendation adopted*, 2021 WL 734976 (S.D.N.Y. Feb. 25, 2021), *as amended* (Feb. 26, 2021). Courts in this Circuit have often used the "fair, reasonable and adequate" standard of Fed. R. Civ. P. 23(e)(2) to assess the validity of a settlement agreement even though a Section 16(b) settlement is not the result of a class action.[5] *See id.* (collecting cases).

I am mindful that "[g]enerally, courts favor compromises of disputed claims." *Levy ex rel. Mktg. Servs. Grp., Inc. v. Gen. Elec. Cap. Corp.*, No. 99-CV-10560 (AKH), 2001 WL 987873, at

5 Section 16(b) claims are not the functional equivalent of derivative actions under Federal Rule of Civil Procedure 23 and therefore the notice requirement of Rule 23.1 does not apply to settlements of Section 16(b) claims. *See Chechele*, 2012 WL 12358221, at *2 ("[T]his Court is satisfied that the instant Section 16(b) action is not a derivative action subject to the class action requirements found in Rule 23, including notice to shareholders . . . ."); *see also Revive*, 2021 WL 56905, at *6 n.7 ("[C]ase law is equally clear that a Section 16(b) suit does not qualify as a derivative action and thus notice need not be provided.").

*5 (S.D.N.Y. Aug. 30, 2001). This policy is "as true for Section 16(b) cases as for other class and representative actions." *Id.* Thus, courts "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328-29 n.72 (S.D.N.Y. 2005). "[T]he court should not substitute its judgment for those of the parties who negotiated the settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008).

**III.**

**SUBSTANTIVE FAIRNESS**

**A. Legal Framework**

When determining the substantive fairness of a Section 16(b) settlement, courts in this Circuit have applied the *Grinnell* factors, assessing:

> (1) risks of establishing liability; (2) risks of proving damages; (3) complexity, expense and likely duration of the litigation; (4) stage of proceeding and the amount of discovery completed; (5) ability of defendants to withstand a greater judgment; (6) range of reasonableness in light of the maximum possible recovery and range of reasonableness in light of all the attendant risks of the litigation; and (7) reaction of other shareholders to the settlement.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also FTR Consulting Group, Inc. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*, No. 02-CV-8608 (RMB), 2005 WL 2234039, at *2 (S.D.N.Y. Sept. 14, 2005). Additionally, some courts also consider "the congressional purpose to cause disgorgement of short-swing trading profits by corporate insiders . . . even when the corporation is unwilling to prosecute such a suit and a derivative plaintiff brings suit instead." *FTR Consulting*, 2005 WL 2234039, at *2.

When applying the *Grinnell* factors, "[a] court need not find every factor militates in favor of a finding of fairness; rather, a court considers the totality of [the] factors in light of the particular circumstances." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007). The court's primary concern for assessing a settlement under Section 16(b) is "the need to compare the terms of the compromise with the likely rewards of litigation." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

**B. Discussion**

I evaluate each of the *Grinnell* factors in order based on the facts presented in the Complaint (ECF 1), Plaintiff's Memorandum of Law in Support of Settlement Approval Motion ("Pl.'s Mem.") (ECF 13), the Kurtz Declaration (ECF 14), and the Declaration of Amit Patel (the "Patel Decl.") (ECF 15).

1. <u>The Risks of Establishing Liability</u>

Courts are more likely to accept Section 16(b) "settlements where the plaintiff's right to recover is subject to serious questions of fact or law." *Schimmel v. Goldman*, 57 F.R.D. 481, 484 (S.D.N.Y. 1973). Courts ask "whether [the defendants'] defenses to this action are sufficiently meritorious to justify the discount from the maximum recovery." *Id.* at 484. Courts "need not determine whether [the defendant] would have prevailed on [potential] defenses; rather [they] must determine whether the defenses raise substantial enough questions to justify [a lower] settlement amount." *Revive*, 2021 WL 56905, at *9.

Plaintiff argues that Defendants raised defenses or exemptions that, if established, could have defeated Plaintiff's claims in whole or in part. (*See* ECF 13, Pl.'s Mem. at 6.)

Defendants could argue they could not be liable under Section 16(b) because they did not beneficially own more than 10% of Plaintiff's registered equity securities for purposes of Section 16. (*See id.* at 7.) Plaintiff would have to prove that Defendants did not hold Plaintiff securities for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business. *See id.* at 8; 17 C.F.R. § 240.16a-1(a)(1)(v), (vii); *cf. Packer v. Raging Capital Mgmt., LLC*, 981 F.3d 148, 152-53 (2d Cir. 2020) (acknowledging that "a registered investment advisor[ ] is an entity exempt from beneficial ownership of shares it holds on behalf of a customer by virtue of exclusion (v) of Rule 16a-1(a)(1), and that [a specific individual defendant] is a control person with respect to [the defendant] and exempt from beneficial ownership by virtue of exclusion (vii) of Rule 16a-1(a)(1)").

Defendants also argued they are not liable under Section 16(b) because the funds did not agree to act together as a securityholder group with respect to Plaintiff's equity securities. (*See* ECF 13, Pl.'s Mem. at 8.) Plaintiff would need to establish that Defendants were acting as a securityholder; that they acted together "for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." 17 C.F.R. § 240.13d-5(b)(1)(i).

Defendants' possible defenses, while rebuttable, create a risk of establishing liability. *See Lewis v. Levinson*, No. 77-CV-1481, 1978 WL 1087, at *1 (S.D.N.Y. 1978) ("Where there is a question of whether there is liability at all . . . there is authority for upholding compromises reached in good faith negotiations."). Therefore, the first *Grinnell* factor favors approving the settlement.

2. The Risks of Proving Damages

Rule 16b-6(c)(2) provides two methods of profit calculation for cases such as this one. Defendants could raise arguments to reduce the disgorgement amount.

The first method explains that "[s]hort-swing profits . . . shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase." 17 C.F.R. § 240.16b-6(c)(2). Plaintiff calculated the maximum possible disgorgement profits using the intraday high prices as of the date of the relevant trades. (*See* ECF 14, Kurtz Decl. ¶ 18.) But, as the words "shall not exceed" indicate, it is not mandatory to use the ceiling amount as the measure of recoverable profits. *See* Ownership Reps. and Trading by Officers, Directors and Principal S'holders, Exchange Act Release No. 34-26333, 1988 WL 1016148, at *28 (Dec. 2, 1988) ("This maximum recovery measure is likely to overstate short swing profits when at least one of the instruments purchased or sold was out of the money at the time of the transaction."); *see also* Ownership Reps. & Trading by Officers, Directors & Principal Sec. Holders, Release No. 34-28869, 1991 WL 292000, at *19 (Feb. 21, 1991) ("If an insider can demonstrate that the amount of profit was less, then a court can order a lesser recovery."). Accordingly, Defendants could argue damages should be reduced because their profit was less.

The second calculation method explains that short swing profits "may" be "valued as of the time of the matching purchase or sale, and calculated for the lesser of the number of underlying securities actually purchased or sold." 17 C.F.R. § 240.16b-6(c)(2). Defendants could argue that contemporaneous pricing should be used as that information is available here. (*See* ECF 13, Pl.'s Mem. at 11.) Thus, there is a risk that the Court would apply the second calculation method, thereby reducing the damages. *See* Arnold S. Jacobs, *Section 16 of the Exchange Act*

(2002) § 3:31 (explaining that to calculate profits under 16b-6(c)(2), "[a] court should try to determine the trading price of the underlying security at the moment the derivative security was purchased or sold."); *see also Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 270 (S.D.N.Y. 2004) (same).

Therefore, since Plaintiffs may not be able to prove the full amount of claimed damages, the second *Grinnell* factor favors approving the settlement.

3. <u>The Complexity, Expense and Likely Duration of the Litigation</u>

The parties argue that this case "presents several novel and complex legal and factual issues" and that any dispositive ruling is "essentially certain to be appealed." (ECF 13, Pl.'s Mem. at 15.) *See Levy*, 2001 WL 987873, at *6 (explaining that courts should consider the "complexity in relation to possible appeals"). Additionally, the parties argue there would likely be extensive fact discovery regarding Defendant's claimed defenses and exemptions and expert discovery in connection with damages calculations. (*See* ECF 13, Pl.'s Mem. at 15.)Thus, the third *Grinnell* factor favors approving the settlement. *See FTR Consulting Grp.*, 2005 WL 2234039, at *3 (finding – in a Section 16(b) action – that the third factor supported approving the settlement when "significant additional time, effort, and expense would be incurred were the case to go forward ").

4. <u>The Stage of Proceeding and the Amount of Discovery Completed</u>

The fourth factor is meant to ensure the parties have a "thorough understanding of their case prior to settlement." *In re IPO Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005)). Courts assess whether counsel had "a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the

strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts have made clear that "[t]he threshold necessary to render the decisions of counsel sufficiently well informed" is "not an overly burdensome one to achieve[.]" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012). This factor may be satisfied even before formal discovery has begun. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CV-5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) (collecting cases). Pre-discovery settlements are routinely approved in Section 16(b) cases. *See Donoghue v. CSX Corp.*, No. 08-CV-9252 (MGC), 2009 WL 750232, at *5 (S.D.N.Y. Mar. 9, 2009).

Plaintiff conducted ample pre-complaint discovery and performed multiple financial analyses to assess potential liability and possible defenses the Defendants could present. (*See* ECF 14, Kurtz Decl. ¶¶ 7, 17-20.) Because Section 16(b) "imposes a form of strict liability," disgorging any profits from insiders regardless of intent, further discovery would likely not be beneficial. *See Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012). Thus, the fourth *Grinnell* factor favors approving the settlement.

5. Defendants' Ability To Withstand a Greater Judgment

Plaintiffs did not offer Defendants a discount due to Defendants' creditworthiness and had full knowledge that Defendants could potentially withstand a greater judgment. (*See* ECF 13, Pl.'s Mem. at 20-21.) While "evidence that the defendant will not be able to pay a larger award . . . weigh[s] in favor of approval of a settlement, . . . . the converse is not necessarily true." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d

721 (2d Cir. 1997). Therefore, the fifth *Grinnell* factor is given no weight and treated as "neutral." *Charron v. Wiener*, 731 F.3d 241, 248 (2d Cir. 2013).

6. The Range of Reasonableness in Light of The Maximum Possible Recovery and the Risks of Litigation

Courts are more likely to accept Section 16(b) settlements when the plaintiff gives a valid explanation for accepting a settlement below the full amount of liability. *See Levy v. Gen. Elec. Cap. Corp.*, No. 99-CV-10560 (AKH), 2002 WL 1225542, at *2 (S.D.N.Y. June 4, 2002) (approving a settlement that amounted to 46% of one measure of recovery because "the risk of judgment in defendant's favor was high"); *Plaskow v. Clausing Corp.*, No. 82-CV-3507, 1983 WL 1320, at *1 (S.D.N.Y. June 1, 1983) (approving a settlement of 70% of claim because "[t]his discount is fair, in recognizing that certain questions exist as to the merits of the case, and, if the case went to trial, further expenses would be incurred."); *Goldman*, 57 F.R.D. at 487 (approving a settlement of 72% of potential liability where issuer's arguments opposing the suit were "substantial and, if successful, would defeat any recovery by the corporation").

Plaintiff has accepted a settlement of $650 million. As discussed above, this is a complex case in which Defendants have meritorious arguments to reduce the risk of liability and the amount of recoverable damages. Plaintiff has explained that there is a broad range of recovery outcomes, from $0.00 to hundreds of millions of dollars and potentially up to $1.60 billion. (*See* ECF 14, Kurtz Decl. ¶¶ 18-20.)

Plaintiff has demonstrated that receiving $650 million in cash now provides additional substantial value to Plaintiff. For instance, Plaintiff has explained that utilizing the $650 million

to pay debt would result in savings of at least $52 million in corporate interest per year. (See ECF 15, Patel Decl. ¶ 7.) Therefore, the sixth *Grinnell* factor favors approving the settlement.

7. The reaction of Other Shareholders to the Settlement

When objections are not filed to a settlement agreement, the seventh *Grinnell* factor "strongly favors approval." *FTR Consulting Grp.*, 2005 WL 2234039, at *4. Plaintiff provided notice of the settlement to each securityholder who previously wrote to Plaintiff demanding that it pursue disgorgement and has not received a response. (*See* ECF 14, Kurtz Decl. ¶ 21.) Additionally, on June 22, 2026, Plaintiff notified its stockholders of the application for settlement approval through a securities filing and did not receive any objections. (*See id.* ¶ 22.) In fact, when the settlement was publicly reported, Plaintiff's stock rose over ten percent. (*See id.* ¶ 16.) Therefore, the seventh *Grinnell* factor favors approving the settlement.

8. Whether the Settlement Furthers the Purpose of Section 16(b)

This factor focuses on the monetary benefits of a settlement to the issuer. *See Levy*, 2001 WL 987873, at *3, *7 (noting that Congress "expressed a strong policy in favor of recapturing profits made by corporate insiders from short-swing sales" and considering whether a proposed settlement provides "sufficient benefit to . . . the corporation for whose benefit the lawsuit was brought and which, under section 16(b), is supposed to receive the benefit of the recovery"). The settlement provides Plaintiff with $650 million in cash, to be wired withing five business days of a final, non-reviewable order of approval. (*See* ECF 14-1, Settlement Agreement ¶ 5.) Additionally, because Plaintiff's attorneys' fees are not based on a percentage of the recovery but rather based on hours (*see* Kurtz Decl. ¶ 23), Plaintiff's counsel is not disproportionally benefitting from the settlement. *See Levy*, 2001 WL 987873, at *7 n.16

(explaining that "counsel should not take better care of himself in a settlement than those he represents"). Therefore, the eighth *Grinnell* factor favors approving the settlement.

**IV.**

**PROCEDURAL FAIRNESS**

When determining the procedural fairness of a settlement, courts examine "the negotiating process by which the settlement was reached to ensure that the settlement is the result of arm's-length negotiations rather than collusion and that all interests have been effectively represented." *In re Metro. Life Deriv. Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982)).

Plaintiff and Defendants negotiated at arm's-length, exchanging numerous offers and counteroffers before reaching an agreement. (*See* Kurtz Decl. ¶¶ 11, 15.) Additionally, the parties were represented by different law firms, both experienced in securities litigation. (*See id.* ¶ 15.) *See States of N.Y. and Md. v. Nintendo of America, Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y.1991) (finding that a settlement was fair because it was "reached only after spirited arms-length negotiations by the parties").

The Board, mindful of its fiduciary duties, approved the settlement. (*See* Kurtz Decl. ¶ 14.) Defendants are not directors or officers of Plaintiff and have no Board representation or other source of management influence on Plaintiff. (*See id.* ¶ 15.) The law considers the corporation a presumptively fair, reasonable, and adequate representative of its securityholders. *See* 15 U.S.C. § 78p(b); *see also In re Integrated Resources*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("The business judgment rule is a presumption that in making a business

decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.”).

Thus, I find that the settlement is procedurally fair. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (“Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.”).

## Conclusion

For the foregoing reasons, the motion for settlement approval (ECF 12) is **GRANTED**. The Clerk of Court is respectfully requested to terminate ECF 12 and to close this case.

DATED: September 28, 2026
New York, NY

SO ORDERED.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**